### MALONE et al. v. DARR.

No. 22848.  Oct. 27, 1936.

Rehearing Denied Dec. 18, 1936.

C. W. Clift, for plaintiffs in error.

Morrison & Shipp, for defendant in error.

McNEILL, C. J. In this action the mortgagor seeks to recover damages from the mortgagee for conversion of an automobile.

Plaintiffs in error, J. M. Malone and J. B. Malone, doing business as Malone Investment Company, sold to Jesse Darr, also known as Henry Clark, defendant in error, a secondhand automobile, receiving in return a promissory note for $200 payable in monthly installments, and also, a chattel mortgage on said car. Default occurred in said payments, and plaintiffs in error obtained possession of said car, and the same was sold. The proceeds of the sale were applied to the indebtedness. The real question involved is whether plaintiffs in error, as mortgagees, upon default of mortgagor, were entitled to the possession of the automobile without or against the consent of the mortgagor for the purpose of selling the same at public or private sale to satisfy the indebtedness due on said car. Defendant in error contends that p'aintiffs in error obtained possession of said car without his consent and by reason thereof he is entitled to recover damages for conversion. The trial court rendered judgment for damages against the mortgagees, defendants below, and the mortgagees contend that they were entitled under their mortgage contract to take said car peaceably without obtaining consent of the mortgagor after default of the mortgagor.

The mortgage contained the usual provisions to the effect that in case default was made in any of the payments scheduled in the note the whole amount secured became due and payable and that the mortgagee might secure by replevin or otherwise said chattel and dispose of same in any manner authorized by law and apply the proceeds toward the payment of same indebtedness. The mortgage also provided that the same was to remain in the possession of said mortgagor as long as mortgagee should deem said mortgage, chattel, and debt safe and secure and the conditions of the mortgage were fulfilled. The mortgage more specifically provides as follows:

"In case default be made in the payment of said debt * * * or any of the payments scheduled on said note, * * * or if said mortgagor shall fail to keep and perform any of the covenants, stipulations and agreements herein contained on his part to be performed, * * * or if said mortgagor shall at any time deem mortgage, said chattels, said debt or said security unsafe or insecure, or shall choose to do, when upon the happening of said contingencies or any of them, the whole amount herein secured on each of said payments scheduled on the note remaining unpaid, is by said mortgagor admitted to be due and payable, and said mortgagee may at said mortgagee's option (notice of which option is hereby expressly waived) foreclose this mortgage by action or in any manner authorized under the laws of Oklahoma, affecting foreclosure of chattel mortgages, and said mortgagee is hereby authorized to enter upon the premises where said goods and chattel may be, and remove by replevin or otherwise and sell the same and all equity of redemption of the mortgagor therein, either at public or private sale, without demand for performance and out of the proceeds of said sale pay the costs of foreclosing this mortgage, and the expense of pursuing, taking, keeping, advertising and selling said goods and chattels. including an attorney's fee of 15% of all amounts remaining unpaid, and apply the residue thereof toward the payment of said indebtedness or any part thereof, in such manner as said mortgagee may elect, rendering the surplus, if any, unto said mortgagor, his executors, administrators and assigns upon demand."

A jury was waived. and the case was tried to the court, and judgment was rendered in favor of plaintiff for damages. We reverse that judgment.

There is no dispute as to defau't in the payments, including the first payment. The evidence is conflicting in reference to the manner of obtaining possession of the automobile. The testimony of the mortgagor was to the effect that he had left his car in a parking place in Oklahoma City; that when he returned from the federal court he found the car locked and the keys gone; that there was a note on the steering wheel from Jerry Malone requesting that he come to see him;

that he went to Malone and asked him for the keys, which request was refused, and about a week later he talked again with Malone and was told that the car had been sold; and that he then offered to make two payments amounting to about $50, which offer was refused.

The evidence on the part of the mortgagees was to the effect that Malone did not take the keys at the time he left the note in the car, but at that time dropped them in a side pocket of the car; that on the next day Darr came to the office and requested him to hold the automobile until the following Saturday and that he would raise the payments and make them; that Darr did not come to him on Saturday, and that they then sold the car; that after they had sold the car Darr came in and tendered $50; that there was $208 due on the car; that they had taken possession of the car by agreement with Darr. The trial court, in effect, found the disputed question of fact in favor of plaintiff, mortgagor, so we must consider that the defendants, mortgagees, took possession of the car without the consent of the mortgagor when they took the keys.

The general rule applicable to the mortgagee in seizing property after default is stated in 11 C. J., sec. 255, page 558, as follows:

"In the absence of a stipulation in the mortgage, it is not necessary that the mortgagee should give notice of his intention to take possession on breach of condition, nor make a prior demand."

A breach of any of the conditions of a chattel mortgage constitutes a default. 5 R. C. L., sec. 96, page 460.

In Oklahoma, in the absence of stipulation to the contrary, the mortgagor has the right of possession thereof. See Jones on Chattel Mortgages and Conditional Sales, vol. 2, sec. 427, page 179. Under our statutes a chattel mortgage creates a lien only upon the property. The rule was clearly stated by this court in the third paragraph of the syllabus in the case of Edmisson v. Drumm-Flato Commission Co., 13 Okla. 440, 73 P. 958, as follows:

"3. Under Oklahoma statutes, a chattel mortgage creates a lien only upon the mortgaged chattels, and, in the absence of specific agreement to the contrary, the mortgagor is entitled to possession, and the mortgagee is only entitled to possession after conditions broken, for the purpose of foreclosure and sale in order to divest the title of the mortgagor, and such sale must be had in the manner prescribed by law or according to the terms of the power contained in the mortgage."

In the body of that opinion the court, speaking through Mr. Chief Justice Burford, said:

"The seizing of possession under a power to sell does not, of itself, affect the nature of the mortgagee's interest, or convert what was before a security into a title. It is a step preliminary to the sale, by which alone the ownership is changed. With possession, but without due sale, the mortgage remains but a lien, to be extinguished by sale or a wrongful conversion. Possession lawfully acquired virtually transforms the mortgage into a pledge, and the pledgee obtains not a common-law lien, but the mere right to sell. * * *

"In order to enforce the lien, the company must first get possession, and then divest title, after which they must account for the proceeds."

Under our decisions and the weight of authority, it is not necessary for a mortgagee, upon default of the mortgage, to obtain the consent of the mortgagor to take possession of the mortgaged property, provided possession can be secured peaceably and without a breach of the peace or resorting to force, stealth, or fraud, but the mortgagee has no right to resort to force or stealth or fraud to obtain possession against the will and consent of the mortgagor. The rule was correctly stated in the early case of First Nat. Bank of Okarche v. Teat, 4 Okla. 454, 46 P. 474, involving a provision for the mortgagee taking possession when deeming himself insecure, as follows:

"An instruction by the court below, that if the defendant had a valid and subsisting mortgage on the property in dispute at the time he took possession of it, and had reasonable grounds to believe, and did believe in good faith, that his security was impaired by the loss of any of the property, or on account of a depreciation in its value, and for such reasons deemed himself unsafe, then he might rightfully take possession of the mortgaged property, although the debt was not due, provided he could do so without any breach of the peace, or could obtain peaceable possession of the same, but that he would have no right to resort to force or stealth or fraud to obtain such possession against the consent of the mortgagor, but would be required to resort to his action at law to secure the same, is not erroneous."

In the case of Waggoner v. Koon, 67 Okla. 25, 168 P. 217, this court said:

"It is probably true that the defendant never expressly assented to the taking of the property, but this, we think, does not make the taking tortious. The only restrictions upon the mode by which the mortgagee secures possession of the mortgaged property, after breach of condition, is that he must act in an orderly manner and without creating a breach of the peace, and must not intimidate by securing the aid of an officer who pretends to act colore officii."

The mortgagor, in the case at bar, being in default in his payments on the indebtedness on January 4, 1931, the mortgagees had the right to take possession of the mortgaged property, provided it was done without resorting to force, stealth, or fraud and without a breach of the peace, even though a demand for possession had not been made upon the mortgagor and he had not given his consent to the mortgagees' taking possession.

The mortgagor refers to the case of Ben Cooper Motor Co. v. Amey, 143 Okla. 75, 287 P. 1017. In that case the court said:

"Where the agent of the mortgagee demanded possession of the automobile from the mortgagor—or purchaser under conditional sales contract—which was refused, and mortgagor told him not to take the car and refused to turn over the car key, then the agent of the mortgagee proceeded to take the car and tow it away, held, the question of conversion was properly submitted to the jury."

That case is easily distinguishable from the instant case. There was evidence in that case that possession of mortgaged property was obtained after the agent of mortgagee was told at the time of the taking not to take possession of same. The court in that opinion said:

"A man is not required, in defending his property, to use physical force to resist the taking thereof by another. If he tells the other not to take the property, and the other person, in the face of the instruction, proceeds to take it, that may be conversion. The circumstances of each case must be considered in determining whether or not 'a breach of peace' has taken place, and the jury is the judge of the facts. In this case, the resistance by the plaintiff made to the taking of his automobile by the agent of the defendant was not strong, and we would not say that the words used by the plaintiff in resisting the taking of his automobile were in themselves, as a matter of law, sufficient to make conclusively the taking thereof conversion. J. I. Case Threshing Machine Co. v. Barney, 54 Okla. 686, 154 P. 674. However, in view of the other attending facts and circumstances, the facts were properly submitted to the jury, and the evidence reasonably sustains the verdict of the jury."

In the present case, there is no evidence that the mortgagees committed a breach of the peace, or acted with force, stealth, or fraud in securing possession of the keys and the car. Neither is there any evidence that the mortgagor had ever told the mortgagees that they could not take possession of the car. On the other hand, the mortgage expressly gave the mortgagees right to possession under the circumstances here presented.

In the case of Wilson Motor Company v. Jack Dunn, 129 Okla. 211, 264 P. 194, 57 A. L. R. 17, this court held:

"Although a chattel mortgage provides that the mortgagee under certain conditions may take possession of the mortgaged property, yet neither the mortgagee, its assignee, nor their agents, have the right to take possession of the property by force, threat, violence, or stealth, and without the consent of the mortgagor. The law will not permit a mortgagee to commit or threaten a breach of the peace, and to justify the conduct by a trial of the rights of property."

In that case it was charged that the agents of plaintiff "by force and violence broke open the building containing the car and unlawfully stole and carried away the same and then converted the same to plaintiff's and intervener's own use." If the car was stolen, it must have been without the consent of the mortgagor. The words used in the quoted syllabus, "and without the consent of the mortgagor," were applicable to the facts in that case. That case and the case of Morgan v. Stanton Auto Co., 142 Okla. 116, 285 P. 962, which quoted from such case with approval, do not conflict with the views herein expressed.

This court recently considered the case of Leedy v. General Motors Acceptance Corporation, 173 Okla. 445, 48 P. (2d) 1074. The General Motors Acceptance Corporation took possession of the car on which it held a chattel mortgage on November 8, 1930, although previous to that time, in October, 1930, it had been warned not to take possession of the car. However, in that case this court held that no force, threats, violence, or even stealth had been used in securing possession of the automobile, and affirmed the decision of the trial court denying the mortgagor judgment for conversion. In the case at bar there was no notice or warning given to the defendants against taking the car when default had been made in the payment of the monthly installments. In the case of Firebaugh v. Gunther, 106 Okla. 131, 233 P. 460, this court sustained an instruc-

tion to the effect "that under the proof offered in the case and not denied by the de-defendant and his agent was not a peaceable taking of the property; that the taking of the property by the defendant through his agent, the deputy sheriff, as shown by the undisputed proof in the case, over the objections of plaintiff's agent, Mrs. Green Gunther, and without the consent and knowledge of the plaintiff or any one acting for him, was intimidation amounting to force within the meaning of the law." In that case the seizure was made over the objections of plaintiff's agent, and the question of conversion was properly submitted to the jury.

In the case of Goodman v. Schulman, 258 N. Y. S. 681, on the question of the necessity of notice before seizure under a chattel mortgage, the court said:

"* * * The law recognizes that personal property taken as a mortgage security because of its transitory nature, can easily be lost, strayed, converted, or stolen. Realty cannot stray or be converted or stolen. Hence the law merchant recognizes the necessity of sanctioning summary methods of seizure to call in chattel mortgages. Were it otherwise, any system of credit extended upon chattels as security would be imperiled and perhaps break down. Cautious lenders would decline to lend on so insecure a collateral. Hence we have the principle that immediately on default the chattels are the property of the mortgagee, to seize as the mortgage provisions direct, and no other or further notice is required except as the chattel mortgage itself covenants."

We conclude that a provision in a chattel mortgage which empowers the mortgagee to take possession of the mortgaged property wherever it may be found entitles the mortgagee to peaceably take possession of the mortgaged property without the mortgagor's consent provided it is accomplished without creating a breach of the peace or resorting to force, stealth, or fraud, for the purpose of foreclosure and sale, but speaking more cautiously and directly to the facts in the instant case, we find that the mortgage in question provided that when the mortgagor failed to keep and perform the covenants, stipulations, and agreements of the mortgage, the mortgagee was authorized to enter upon the premises where the automobile might be and remove the same, by replevin or otherwise, for the purpose of foreclosure and sale, without demand for performance. Those covenants are binding, but when the mortgagor refuses to carry out his agreement, then the mortgagee must seek to enforce his contractual rights in the

manner in which every other contractual right is enforced, and that is not by force, stealth, or fraud.

The question of conversion must be determined from the facts and circumstances in each particular case, and in the instant case it is our opinion that the mortgagor failed to make out a prima facie case, and said cause is reversed and remanded, with directions to enter judgment for plaintiffs in error.

OSBORN, V. C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur. BAYLESS, WELCH, and CORN, JJ., dissent.