## J. I. CASE THRESHING MACHINE CO. v. BARNEY.
### *et al.*

No. 4962.    Opinion Filed January 18, 1916.

(154 Pac. 674.)

1. **CHATTEL MORTGAGES—Possession of Property—Right—"Conversion."** Where a chattel mortgage contains a clause giving the mortgagee the right, upon default by the mortgagor in making payments provided for, to take possession of the property and sell it, upon such default the mortgagee has the right to take peaceable possession, and although he has not the right to use force in taking possession, yet the mere fact that the mortgagor refused to consent to the taking does not constitute "conversion."

2. **SAME—Foreclosure—Evidence—Purchase at Receiver's Sale.** Where the judge has appointed a receiver and ordered the property sold and the sale has been effected, it is error for the court, upon the trial of the cause to foreclose the mortgage, to peremptorily discharge the receiver and set aside his acts under the receivership and to exclude the evidence of the purchase of the property by the plaintiff at the receiver's sale.

3. **SAME—Instructions—Damages.** It is error for the court to instruct the jury that the defendants, the mortgagors, are entitled to recover the value of the property from the plaintiff when the plaintiff took possession of it, under a chattel mortgage authoriz-

ing it to do so upon default by the mortgagors, when the taking did not constitute a conversion.

(Syllabus by Hatchett, C.)

*Error from District Court, Woods County;*
*R. H. Loofbourrow, Judge.*

Action by the J. I. Case Threshing Machine Company against W. H. Barney and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*T. J. Womack* and *Keaton, Wells & Johnston,* for plaintiff in error.

*E. W. Snoddy* and *J. P. Gore, Sr.,* for defendants in error.

Opinion by HATCHETT, C. This action was brought on the 11th day of June, 1908, in the district court of Woods county, by the J. I. Case Threshing Machine Company against W. H. Barney *et al.,* on notes aggregating $2,412.13 and interest and $100 attorney's fee, and to foreclose the mortgage on a threshing outfit. On the 29th day of June, 1908, the court made an order appointing a receiver to take charge of the property, authorizing and directing him to sell the same at public auction upon notice. On the 11th day of July, 1908, the receiver sold the property to the plaintiff for $1,400. On July 10th, the defendants filed their answer, in which they set up that at the time the notes and mortgage were executed the plaintiff's agent orally agreed that the same should be paid solely out of the earnings of the machinery, and also pleaded that the plaintiff had converted the property, and that it was of the value of $3,000, and also that the plaintiff had taken possession of the property in the fall of 1907 and failed to protect

it, and that parts became lost and it depreciated in value. At the trial the court excluded evidence of the first defense set up in the answer, to wit, the oral agreement to pay the notes out of the earnings of the thresher, and that question is not before us. Evidence was introduced on the issues formed by the other portions of the answer, and verdict was rendered for the defendants and judgment entered thereon, and plaintiff has appealed.

During the trial the court of its own motion made an order setting aside the former order appointing a receiver, and discharged the receiver and set aside all of his acts.

The evidence showed that one Brewer, as agent for the plaintiff, took possession of the property and moved it to the city of Alva, where it remained for several months before the receiver's sale. The defendants contend that the taking possession by the plaintiff was a conversion. The defendant Barney, who had the machine under his control, testified as follows:

"He [Brewer] came to me and wanted me to deliver the outfit to him without any words; just turn it over to him; and I says: 'No; I will not;' and he said he would take it anyway; said he had that authority; and I says, 'It looks to me like you would have to take some legal steps'; and he said he could take it wherever he found it at any time if he felt himself unsafe and insecure. I told him I had cleaned up the machine and emptied the water out of the boiler so as to protect it. Q. What did he say, if anything? A. He went down and seen Mr. Stewart and hired him to get the machine and bring it down town, and then I suppose he got to thinking about it— Q. Don't tell what he thought. A. He told me he was going to Alva, but next morning he came back— I think it was the next morning. Mr. Stewart came,

and I told him I didn't want him to touch it, and he wouldn't, so Mr. Brewer took the machine. Q. State whether or not he took it over your protest and your wishes. A. Yes, sir. Q. Do you know where they took the outfit to? A. They brought it to Alva and placed it back of Fred Hanford's hardware store. Q. Did you tell Mr. Brewer why he couldn't have the outfit? A. I told him I had no right to deliver it; that it belonged to the company, and we are all equally responsible for the care of that machine."

The witness Stewart testified on that point as follows:

"A. He [Brewer] came to me and wanted me to bring it [the machine] in, and I asked him what he would pay me and he told me, and I told him I would bring it if it was all right with the company; if everything was satisfactory with them—I didn't want to get in any trouble with any of the fellows of that company—and he said all right, he would stand between me and any trouble; and the water tank wasn't with the machine and we took a team and went and got the wagon. There was a cook shack on it, and we went and unloaded the shack and put the tank on the wagon, and Mr. Barney told us he wasn't willing to give up the machine, I believe— Q. Go ahead. A. I told him if it wasn't satisfactory with them I wouldn't bring it, and I went back home, but it wasn't long until Brewer came over, and he said he fixed it so Mr. Barney wouldn't have any hard feelings against me about it, and he wanted me to go ahead and bring it in, and so I went over there and we finally filled up the boiler and fired up and run it in to town."

The mortgage contained the clause giving the mortgagee the right, upon default in the payment of any of the notes or part thereof, to take possession of the mortgaged property and sell the same. We think the taking possession under the circumstances related by the wit-

nesses was not a conversion. 7 Cyc. 78-80; *Singer Mfg. Co. v. Ryos,* 96 Tex. 174, 71 S. W. 275, 60 L. R. A. 143, 97 Am. St. Rep. 901.

While the plaintiff did not have the right to take the property by force, yet we think the mere refusal of the defendants to consent to the taking was not sufficient to constitute the taking a conversion.

The plaintiff complains that during the trial, when it offered to introduce evidence of the appointment of the receiver and sale of the property, the court excluded the same, and of its own motion set aside the receivership and the acts of the receiver thereunder. No authorities are submitted on this question in either of the briefs. The authority of the judge to appoint a receiver and order the property sold is not questioned, and without passing thereon we will assume that he had that power. We think, then, it was error for the court peremptorily to revoke the order and set aside the receivership after the sale had been made under the terms of the order and to refuse to permit the plaintiff to show that it had purchased the machine at a sale which had theretofore been ordered.

The court gave the following instruction which is complained of by the plaintiff:

"You are instructed that the defendants are entitled to be credited on their notes with an amount equal to the actual value of the property at the time it was taken into the possession of the plaintiff on the 26th day of November, 1907, and if you find that the amount credited upon the notes, plus the value of the property at the time it was taken, equals or exceeds the amount then due on the notes to the plaintiff, then your verdict should be in favor of the defendants; but if you find from a preponderance

of the evidence that the amount credited upon the notes, plus the value of the property at the time it was taken by the plaintiff, is less than the amount then due on the notes, then your verdict should be in favor of the plaintiff for such difference, together with interest thereon to this date."

This instruction is tantamount to an express holding by the court that the acts of the plaintiff constituted a conversion, and that the defendants were entitled to recover the value of the property at the time plaintiff took possession of it. Having held that the taking under the circumstances did not constitute conversion, and there being no evidence as to what finally became of the property, then this instruction was clearly erroneous. The court should have charged the jury that the taking in the first instance did not amount to conversion. The fact that the plaintiff waited several months after taking the property to commence proceedings to foreclose its mortgage under the facts in this case does not constitute conversion. The evidence showed that after the property was taken over by the plaintiff there was some negotiation toward effecting a settlement. We do not think the delay under the circumstances amounted to a conversion of the property. *Croze v. St. Mary's Canal Mineral Land Co.*, 143 Mich. 514, 107 N. W. 92, 313, 114 Am. St. Rep. 677, and cases cited.

We think, however, that the plaintiff was probably guilty of negligence in retaining the property for so long a time, and the defendants are entitled to recover damages if the machinery was injured. The measure of damages would be the difference between the value of the property when taken over by the plaintiff and its value when disposed of.

It may be that the receiver's sale was void or so irregular as to make the plaintiff guilty of a conversion when it bought the property. The facts relating to the sale not having been gone into at the trial, we are not presuming to say whether or not they amounted to a conversion.

We therefore recommend that the judgment of the trial court be reversed, and the cause remanded for further proceedings.

By the Court: It is so ordered.